UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


RONALD PAK ZERN,

     Petitioner,

v.                                                                Case No. 3:18cv731-RV-HTC

MARK S. INCH,

     Respondent

_____/

## REPORT AND RECOMMENDATION

Petitioner, Ronald Pak Zern, proceeding *pro se*, filed a petition under 28 U.S.C. § 2254 by delivering it to prison mail officials on April 12, 2018. ECF Doc. 1. The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the petition, the State's response (ECF Doc. 30), and Zern's replies (ECF Docs. 38, 48), the undersigned recommends the Petition be **DENIED** without an evidentiary hearing. Zern has procedurally defaulted on his claims, and even if he had not, his claims fail on the merits.[1]

---

[1] Zern also filed a motion for response of final judgment (ECF Doc. 51). As an initial matter, the Court has the discretion to manage its docket. Moreover, the Respondent's Response was filed on March 27, 2019, and Zern's final reply was not filed until October 2, 2019. Thus, the Court has not been dilatory in reviewing Zern's Petition. Regardless, the issuance of this Report and Recommendation, moots Zern's motion.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Zern was charged in an Amended Information on August 21, 2014 with the following five counts:

Count 1:  Attempted robbery armed with a firearm, 10-20-life
Count 2:  Aggravated battery upon person 65 years of age or older with a firearm, 10-20-life
Count 3:  Aggravated assault by threat with firearm (actual possession without discharge), 10-20-life
Count 4:  Possession of firearm by convicted felon, 10-20-life
Count 5:  Tampering with evidence

ECF Doc. 30-1 at 101-02.  Zern went to trial before a jury on Counts 1-3 and 5 on August 25-26, 2014.  Count 4, possession of a firearm by a convicted felon, was severed so that the fact of prior convictions would not need to be brought out unless Zern testified.  *See* ECF Doc. 30-1 at 273.  Count 4 was eventually *nolle prossed* by the State after the trial.  *Id.* at 205.

The victim of the attempted robbery and aggravated battery was Zern's 77-year-old father, who testified at trial.[2]  TT at 74.  He testified that on February 22, 2013, Zern called him and asked him to drive Zern to a movie.  Zern's father picked him up, drove him to a shopping center which contained the movie theater and parked.  It was pouring rain outside.  Before they left the car, Zern surprised his father by pulling out a handgun and demanding his keys.  TT at 78.  The father refused and pulled the keys out of the ignition.  Zern struck him in the forehead with

---

[2] The trial transcript will be referenced as "TT" followed by the relevant page number on the transcript itself.  The trial transcript can be found at ECF Doc. 30-2.

the barrel of the gun.  As the father attempted to leave the car, Zern grabbed at his arm, scratching him and pulling off his watch.  The father got out of the car and ran up to the front of the theater, where Zern tackled him and continued trying to get the keys.  Zern's father heard someone in the background and yelled to the person to call 911.  Zern's father then heard a male voice yell at Zern at which time Zern released him and fled.  Zern's father was then taken inside the theater to be treated for his injuries.

The male voice yelling at Zern was Gary Johnson, a technician at the movie theater, who also testified at trial.  TT at 94.  Johnson stated that, while he was working in the theater, he heard someone shout that there was a robbery outside. When he looked out the window, he saw a younger man on his knees on top of an older man, "swinging and hitting him."  TT at 95.  Johnson ran outside and yelled at the younger man to "get off of him."  *Id.*  Zern did so and took off running.

Johnson testified that he ran after Zern, but eventually Zern turned and pointed the gun at Johnson and said, "don't, don't."  *Id.*  Johnson testified, "Right then I stopped, scared for my life."  *Id.*  Zern ran off again, and Johnson followed more cautiously and farther behind, shouting to bystanders to be careful because Zern had a gun.  He testified that his coworker, Jesse Pinner, was also there running behind him and speaking on the phone with 911.  Johnson saw Zern run behind the shopping center and jump over a fence into an apartment complex.  TT at 98.

Johnson testified that he "absolutely" was able to "get a good look at the suspect that day" because when he turned around and pointed the gun at him, Johnson looked him in the eye.  TT at 101.  He testified the gun was aimed at him for "ten seconds" and he was "[a] hundred percent, absolutely positive" Zern was the person he saw that day.  TT at 108-10.  Johnson also testified that he did not know either of the Zerns prior to that day.

Pinner also testified at trial.  TT at 111.  Pinner corroborated Johnson's testimony and added that he was ten-to-fifteen feet behind Johnson when Zern turned and aimed the gun at them.  TT at 113.  He could see the gun over Johnson's shoulder.  *Id.*  During Pinner's testimony, a recording of the 911 calls Pinner made were played.  During the call, Pinner told the dispatcher that Zern had a gun and had pulled it on Johnson but that they were still chasing Zern at a distance.  TT at 120-21.  After Zern jumped over the fence, Johnson (who had been given the phone by Pinner) told the dispatcher that Zern had a semiautomatic gray handgun, "pulled it right out at me, pointed it at me and said, stop or I'll shoot."  TT at 123.  Pinner also identified Zern in court as the person with the gun that day.

On cross-examination, Pinner admitted he did not see Zern dispose of or discard the gun.  TT at 132.  Also, Johnson testified he stopped following Zern once he jumped the fence and was never asked about whether he saw Zern dispose of or discard the gun.

The first-responding officer, Kevin Kirkpatrick, testified that when he arrived at the movie theater he observed injuries to Zern's father's head and arm and that, despite an exhaustive search involving a canine, no gun was found at the scene. However, he testified that a box of .9-millimeter ammunition was eventually found. TT at 142-43. He did not testify as to exactly where the ammunition was found.

Another responding officer, Marcus O'Sullivan, also testified. TT at 144. Having heard that the gunman had run into an apartment complex, O'Sullivan drove to the apartment complex that was behind the movie theater complex. He testified he was familiar with the complex and knew there was a grassy area and trees between the fence and the apartments. TT at 152. After a few moments, he found Zern in a stairwell in the complex, wearing the same clothes Johnson and Pinner described the gunman as wearing and breathing heavily as if he had been running. TT at 147-48.

O'Sullivan searched Zern but did not find any weapons. TT at 148. He also described the extent of the search conducted by several deputies for the gun on that day and on subsequent days. TT at 153-54. The search did not yield a gun but did yield the ammunition box. However, no DNA or fingerprints were recoverable from the box or the bullets in it.

Zern, against his counsel's advice, opted to testify at trial. Zern testified that when his father stopped the car at the movie theater, the two began to fight about whether they should get out of the car in the rain. The father started to get out of the car, and Zern grabbed his arm to prevent his father from getting out and getting wet.

Then, when the father insisted, he hit his head on the door on the way out of the car. Zern testified he never had a gun and did not hit his father with a gun.

Zern testified that his father then ran toward the theater in the rain, and Zern followed, trying to get him to return to the car. When Zern reached his father in front of the theater, "he was pushing me off of him, and I was trying to grab him, and I was telling him, let's get back to the car." TT at 177-78. Zern insisted that Zern was calm, "I was just, like, laughing about it and kissing him on the cheek and hugging him and telling him, I'm sorry." *Id.* at 178. Zern claimed that his father then became angry, cussed and falsely yelled that Zern was trying to rob him with a gun.

Zern claimed he ran from Johnson when Johnson approached because he was scared that Johnson was going to beat him up. Zern denied he had possessed a gun at any time, had pointed a gun at his father or at the two witnesses, or had even stopped and spoke with Johnson. TT at 180. Also, he claimed he grabbed at the keys while in the car simply "to put them back into the car to listen to the radio" and that "I was just horse-playing with my dad. The reason why he [Zern's father] said that is because he got mad and he got upset" because his watch had broken and he had hit his head. Zern could not explain why the two witnesses would have falsely said he had a gun except to argue that "what they said and from what my father said are three different accounts." TT at 182-83. On cross-examination, the prosecutor elicited an admission from Zern that he was the individual chased by Johnson and

Pinner and that he had seven prior felonies and seven prior misdemeanors involving dishonesty. TT at 186.

Zern was convicted on all four counts as follows: On Count 1, the jury found Zern guilty of the lesser included offense of Aggravated Assault and that he actually possessed a firearm; on Count 2, the jury found Zern guilty of Aggravated Battery on a Person 65 Years of Age or Older and that he actually possessed a firearm; on Count 3, the jury found Zern guilty of the lesser included offense of Improper Exhibition of a Firearm; and, on Count 4 (Count 5 in the Amended Information), the jury found Zern guilty of Tampering with Evidence. ECF Doc. 30-1 at 128-30.

Zern filed a direct appeal in which he raised only two issues, both dealing only with his competency to proceed to trial. ECF Doc. 30-3 at 2. The First DCA reversed and remanded the case for the trial court to reconsider whether Zern was competent to proceed at trial. ECF Doc. 30-6. On remand, the trial court found Zern was competent to proceed at trial, ECF Doc. 30-7 at 8, and the First DCA affirmed with a *per curiam* written opinion on April 4, 2017. ECF Doc. 30-11 at 1. On May 2, 2017, the First DCA denied Zern's motion for rehearing. *Id.* at 11. The mandate was issued on May 18, 2017. *Id.* at 13. The conviction thus became final on July 3, 2017, ninety (90) days after the date of the First DCA opinion, when the time for seeking Supreme Court review expired. *Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) ("entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court

review, within the meaning of Supreme Court Rule 13.3 and 28 U.S.C. § 2244(d)(1)(A).").

Zern delivered to prison mail officials a motion to reduce sentence under 3.800(c) on June 18, 2017, which did not raise any of the grounds brought in his federal petition. ECF Doc. 30-12 at 1. It was denied on August 22, 2017, and Zern did not appeal. *Id.* at 10.[3] On March 27, 2018, Zern delivered to prison mail officials a motion for postconviction relief under Fla. R. Crim. P. 3.850. ECF Doc. 30-13 at 13. However, the trial court struck the motion as insufficiently pled on July 23, 2018. *Id.* at 56.

On September 10, 2018, Zern filed a second or amended motion for postconviction relief. *Id.* at 59. This motion raised four grounds, all relating to his competency to stand trial, and none of which dealt with the four issues raised in the instant federal petition. The state court denied the motion on the merits on January 1, 2019. *Id.* at 74. Zern appealed, and the First DCA affirmed, *per curiam* without a written opinion, on July 18, 2019, with the mandate issuing on August 15, 2019. The First DCA denied Zern's motion for rehearing on October 15, 2019.[4]

---

[3] Because the 3.800(c) motion was filed June 18, before the finality of the conviction on July 3, no days tolled on the AEDPA clock until the time for appealing the August 22 denial of the 3.800(c) motion expired thirty days later, on September 21, 2007. *See Blanton v. Sec'y, Dep't of Corr.*, 2019 WL 2395916, at *2 (M.D. Fla. June 6, 2019) (citing *Cramer v. Sec'y, Dep't of Corr.*, 461 F.3d 1380, 1383 (11th Cir. 2006)).

[4] Because the federal petition was filed before the appeal of the denial of the amended 3.850 motion was resolved, the record supplied by the State did not contain the First DCA judgment and mandate. The undersigned verified the dates of the judgment affirming the denial and the mandate on the First DCA online filing system, available at http://onlinedocketsdca.flcourts.org/.

Whether or not the first 3.850 motion (which was dismissed as insufficiently pled) is considered "properly filed", the petition is timely filed. The tolling of the AEDPA clock during the pendency of the 3.800(c) motion ended on September 21, 2017. Even if the time the first 3.850 motion was pending is not excluded, only 354 days passed before the amended 3.850 motion was filed on September 10, 2018, and the federal petition was filed while that motion was still pending on appeal. *See Lawrence v. Fla.*, 549 U.S. 327, 332 (2007) (a state postconviction application remains pending "until the application has achieved final resolution through the State's postconviction procedures."). Thus, a total of 354 un-tolled days, at most, passed before the federal petition was filed, making the petition timely filed.

## II.    ZERN FAILED TO EXHAUST HIS CLAIMS AND THEY ARE NOW PROCEDURALLY DEFAULTED

Before filing a habeas petition in federal court, a petitioner must exhaust all available state court remedies. 28 U.S.C. § 2254(b), (c). A failure to exhaust occurs "when a petitioner has not fairly presented every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1284 (11th Cir. 2012) (internal quotation marks and brackets omitted). For an issue to be "fairly presented," a petitioner must have "presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation."

*McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (internal citations and quotations omitted).

Zern's petition raises four grounds for relief: (1) Zern "was charged with possession of a firearm by a convicted felon and there was not ever a firearm as evidence in this trial.  Nor was there ever a firearm in his possession.  This is an 'illegal' charge and defendant never got the opportunity to take this charge to a jury trial which is unconstitutional"; (2) the charges on which Zern was convicted at trial are all illegal charges because, although they require proof of actual possession of a firearm, no firearm was ever produced in jury trial for evidence; (3) the State and state court never allowed Zern to have a trial on Count 4 of the Amended Information, charging felon in possession, but went to trial on the other four counts which deprived Zern of his constitutional rights to defend himself "by using the fact that he cannot be charged nor convicted of any of these charges when no firearm of actual possession was ever produced as evidence"; and (4) the State used two witnesses who stories conflicted with each other and changed over time and who "could not prove any charges of a firearm ever existed."  ECF Doc. 1.  As discussed below, Zern failed to present any of these claims to the state court.

### A.    Zern Has Failed to Fairly Present His Federal Claims to the State Courts

In his direct appeal, Zern raised only the following two issues:

The court erred in finding Mr. Zern competent to proceed without a hearing after ordering expert evaluations, and then in denying a

subsequent defense motion for a competency determination without ordering new evaluations or conducting a hearing.

In the alternative, the court abused its discretion in failing to order a subsequent evaluation when both the defense motion for a competency determination, and the court's own observations of the Defendant, should have given the court reasonable grounds to believe the Defendant was not competent to proceed.

ECF Doc. 30-3 at 2.[5]  He did not raise any issue regarding whether a firearm was offered as evidence at trial or the insufficiency of the witnesses' testimony at trial.

In his 3.800(c) motion, Zern appealed to the mercy of the trial court to reduce his sentence because of his efforts at rehabilitation in prison and his mental health issues.  ECF Doc. 30-12 at 1-7.  The motion did not mention a firearm or the witnesses' testimony.

In his amended 3.850 motion, he raised only the following four issues:

Ground One: "Ineffective assistance of counsel" concerning the "retroactive" determination of competency by the trial court on remand.

Ground Two: "Newly discovered evidence" concerning the reports of doctors Turner and Bingham and Zern's competency.

Ground Three: "Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the

---

[5] In both his replies (ECF Docs. 38 and 48), Zern continues to take issue with whether he was competent to stand trial.  The Court cannot consider that argument, however, because Zern cannot amend his petition through arguments made in a reply.  The Eleventh Circuit has repeatedly admonished, "[a]rguments raised for the first time in a reply brief are not properly before a reviewing court."  *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (quoting *United States v. Coy,* 19 F.3d 629, 632 n. 7 (11th Cir.1994) (citation omitted)); *see also United States v. Whitesell,* 314 F.3d 1251, 1256 (11th Cir.2002) (Court need not address issue raised for first time in reply brief), *cert. denied,* 539 U.S. 951 (2003).

defendant" where the favorable evidence related to a doctor's report about Zern's competency.

Ground Four: "Lack of [Jurisdiction] of the Courts to Enter the Judgment or Impose Sentence" due to the lack of "an independent finding for the third doctor's competency evaluation."

ECF Doc. 30-13 at 59-66. Nothing in the amended 3.850 motion dealt with whether a firearm was introduced at trial or with the sufficiency of the witnesses' testimony at trial. Therefore, Zern did not present at all, much less "fairly present", the grounds of his federal petition to the state courts.

## B.    Dismissal of a Procedurally Defaulted Claim

If a petitioner fails to exhaust state remedies, the district court must generally dismiss the claims without prejudice to allow the petitioner an opportunity to present the claims before a state court. *Jimenez v. Fla. Dep't of Corr.*, 481 F.3d 1337, 1342 (11th Cir. 2007). However, if it is obvious that the unexhausted claim would be procedurally barred in state court, the federal court should treat the unexhausted claim as procedurally defaulted. *Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003); *see also Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (*per curiam*) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile.").

Here, Zern is barred under Florida law from returning to state court and presenting these claims in a postconviction motion. Such a motion is untimely under

Fla. R. Crim. P. 3.850(b) because his judgment of conviction became final on July 3, 2017, more than two years ago.  Additionally, none of the exceptions to Rule 3.850(b) apply to Zern.  He knew the facts on which these claims are predicated well before his 2-year deadline.  Also, Zern's claims are not based on a "fundamental constitutional right ... not established within the period provided for herein and ... held to apply retroactively."  Rule 3.850(b)(2).  Finally, the time for Zern to file a 3.850 motion under Rule 3.850(b)(3) has also expired.  Therefore, Zern has procedurally defaulted each of his claims, and they should be dismissed unless he can show some exception to the procedural default doctrine (which he cannot do, as discussed below).

### C.  Zern Cannot Show Cause, Prejudice or a Fundamental Miscarriage of Justice to Excuse His Procedural Default

The only exception to the doctrine of procedural default is where a petitioner has established "cause and prejudice or the fundamental miscarriage of justice," *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *see also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of

constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

Here, neither the "cause and prejudice" nor "miscarriage of justice" exception saves his procedurally defaulted claims. Zern has presented nothing to suggest that any "objective factor external to the defense impeded the effort to raise the claim[s] properly" in his appeal or first 3.850 motion. *See Wright*, 169 F. 3d at 703. Instead, he simply claims that he and his appellate counsel "were more focused on 'competency' violations" during his appeals and postconviction motions. ECF Doc. 1 at 5. Also, although the State raised exhaustion in its response, ECF Doc. 30 at 8, Zern does not address the issue in his reply, ECF Doc. 48.

Zern also cannot show that the errors he claims in his federal petition "infected the entire trial with error of constitutional dimensions" such that there is "a reasonable probability of a different outcome." *Crawford v. Head*, 311 F.3d at 1327-

28.  As discussed more fully below, three eyewitnesses testified that they directly observed Zern possessing a gun that day, including Zern's father who also testified that Zern hit him with the gun and used the gun to attempt to rob him of his keys. Zern's claims therefore do not raise "a reasonable probability of a different outcome." *See id.*

## III.    ZERN'S CLAIMS FAIL ON THEIR MERITS EVEN IF THEY HAD BEEN EXHAUSTED

### A.    Ground One

As stated above, in Ground One, Zern argues he "was charged with possession of a firearm by a convicted felon and there was not ever a firearm as evidence in this trial.  Nor was there ever a firearm in his possession.  This is an 'illegal' charge and defendant never got the opportunity to take this charge to a jury trial which is unconstitutional."  ECF Doc. 1.  This claim does not entitle Zern to habeas relief.

Although Zern was charged with being a felon in possession, that charge was severed before trial and then dismissed by the State.  Therefore, he was not convicted of the felon-in-possession charge.  Section § 2254 states that the district court can entertain an application for a writ of habeas corpus on behalf of a person "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254.  Since Zern was never convicted of being a felon in possession, his allegations

do not trigger application of 28 U.S.C. § 2254.  *See Eato v. Sec'y, Fla. Dep't of Corr.*, 713 F. App'x 860, 862 (11th Cir. 2017).

To the extent Zern is arguing that it was somehow error for the State to sever the felon in possession charge or subsequently dismiss it, Zern has provided no authority, and none exists, to support such an argument.  Indeed, having the trial severed was to Zern's benefit as it prevented the jury from unnecessarily learning about Zern's prior convictions.

### B.    Grounds Two and Three

Zern's second and third grounds both depend upon the argument that the charges on which Zern was convicted at trial are all "illegal charges" because they require proof of actual possession of a firearm and no firearm was ever produced. Neither ground entitles Zern to habeas relief because they are refuted by the record and by Florida law.

When considering a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The *Jackson* Court continued, "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the

evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution." *Id.*

Under Florida law, "[e]yewitness testimony that the defendant possessed a firearm is sufficient evidence . . . that the defendant was in possession of a firearm." *Akins v. State*, 838 So.2d 637, 639 (Fla. 5th DCA 2003) (citing *Fletcher v. State*, 472 So.2d 537 (Fla. 5th DCA 1985); *Crump v. State*, 629 So.2d 231 (Fla. 5th DCA 1993)). Therefore, "[i]t is not fatal to the prosecution if the state does not introduce the weapon into evidence." *Akins*, 838 So.2d at 639 (citing *Fletcher*, 472 So.2d at 539). As noted above, three eyewitnesses testified at trial that they saw Zern possess the firearm. Also, the 911 tape in which both Pinner and Johnson told the dispatcher that they saw Zern with a firearm was played for the jury. TT at 120-23. Therefore, a rational trier of fact could have found the essential elements of the crimes alleged and actual possession of a firearm beyond a reasonable doubt.

## C.    Ground Four

Finally, Zern's fourth ground -- that the State used two witnesses who stories conflicted with each other and changed over time and who "could not prove any charges of a firearm ever existed" -- does not entitle him to habeas relief.

Petitioner argues first that Jesse Pinner told the 911 operator that he did not see a gun in the hand of the man he was following. This is refuted by the record. In fact, Pinner said to the 911 operator "Yes, he does have a weapon. We saw it." TT at 120. When asked by the dispatcher what kind of weapon it was, Pinner answered,

"He has a gun.  He pulled it on Gary."  TT at 121.  Also, at trial, Pinner positively testified he saw a gun, which he described as of "larger caliber" and "semiautomatic."  TT at 114.  Zern makes much of the fact that at one point during the 911 call Pinner stated he did not know what type of weapon it was (TT at 122), but at trial Pinner made clear he knew the weapon was a gun, he just did not know which brand of gun.  TT at 130.

Petitioner next complains that Johnson had said, apparently in deposition,[6] that he had seen a gun being thrown over a fence and that the probable cause affidavit also attributes a similar statement to Pinner.  ECF Doc. at 45.  Also, Deputy O'Sullivan testified Pinner had told him that the suspect had thrown the weapon aside.  TT at 154-55.  During his testimony at trial, however, Pinner testified that he did not see Zern dispose of or discard the gun.  TT at 132.  Petitioner asserts that this conflict in testimony rendered his trial unfair.  Also, Petitioner asserts that because no gun was found after a thorough search, as Deputy O'Sullivan testified, the alleged statement about seeing the gun thrown over the fence is so inconsistent as to make the State's entire case invalid.

The jury heard the testimony of the all the witnesses and was free to resolve any inconsistencies in reaching its verdict. As noted above, it is the sole "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh

---

[6] The deposition transcript is not in the Record on Appeal.

the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. A federal district court is not entitled to re-weigh the credibility of witness testimony. As also noted above, the evidence against Zern was considerable, including the eyewitness testimony of his own father which matched the testimony of two other eyewitnesses who had no connection to the Zern family prior to the event in question. Accordingly, Zern is not entitled to habeas relief on this ground. *See Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 463 (11th Cir. 2015).

## IV. NO EVIDENTIARY HEARING IS WARRANTED

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

## V. A CERTIFICATE OF APPEALABILITY SHOULD BE DENIED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing

required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## VI.    CONCLUSION

Accordingly, it is ORDERED:

1.    Plaintiff's Motion for Response of Final Judgment (ECF Doc. 51) is DENIED as MOOT.

It is further respectfully RECOMMENDED:

1.    That the petition under 28 U.S.C. § 2254 (ECF Doc 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

3.      That the clerk be directed to close the file.

At Pensacola, Florida, this 3rd day of January, 2020.

/s/ Hope Thai Cannon

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. See 11th Cir. R. 3-1; 28 U.S.C. § 636.